### SUIT v. TAYLOR et al.

### No. 14022.

Court of Civil Appeals of Texas. Dallas
Jan. 28, 1949.

Rehearing Denied March 4, 1949.

Malone, Lipscomb & Seay, of Dallas, for appellant.

Norman, Stone, Rounsaville & Hassell, of Jacksonville, and Shook & Shook, of Dallas, for appellees.

YOUNG, Justice.

This is a matter of venue. Plaintiffs below filed two identical suits for personal injuries, arising out of the same collision of automobiles on a Kaufman County highway. Under stipulations of counsel, the issue here involved was presented at one hearing, including the docketing of causes as a single case on appeal. In each instance, defendant Elsie N. Suit, a feme sole of Jefferson County, filed plea of privilege to be sued at her place of residence, countered by the controverting affidavits of plaintiffs urging Exception 9, Crime or Trespass subd., and 29a of Art. 1995, Vernon's Ann.Civ.St.; and the trial court having overruled such pleas, the record is before us for review. (It was agreed in both causes, Nos. 19018 and 19019, that the pleas of privilege of the Shipleys, defendants, were not well taken and should be overruled.)

As descriptive of the accident, we quote from paragraph 1 of the Taylor petition just referred to (bearing in mind that all charges involving the car of defendant Elsie N. Suit in the collision are merely allegations of the pleader and subject to proof): "Plaintiffs allege that Highway No. 175 runs in a general North and South direction from Kaufman, Texas, to Dallas, Texas, and particularly through the West portion of Kaufman County, and that on or about July 23, 1947 about 10 o'clock A.M. Plaintiff, Mrs. Evelyn Taylor, was driving a Plymouth automobile in a Northerly direction on Highway No. 175 at a point just West of the East Fork of the Trinity River, and was operating her car on its own right hand side of the center line of said Highway when it was struck and collided with headon by a Chevrolet automobile, which was being operated at the time by the Defendant, Mrs. Edith Shipley, which automobile came directly across the highway from its right hand side to its left hand side and directly in the path of the Taylor car, resulting in a headon collision. Just prior to the time the Shipley car propelled or driven in front of the Taylor car, there was a third automobile traveling in a Southerly direction that approached the rear of the Shipley car and passed it on its right hand side, striking the Shipley car, which third car was at said time being driven and operated by the Defendant, Elsie N. Suit, and that the injuries sustained by the Plaintiff, Mrs. Evelyn Taylor, and the resulting damages were occasioned by the negligence of the Defendants in connection with the operation of the Chevrolet Coupe by the Defendant, Mrs. Edith Shipley, and the Oldsmobile Sedan by the Defendant, Elsie N. Suit, each of whom was negligent in the operation of their respective automobiles as hereinafter set out." To the foregoing allegations of liability with respect to appellant, her answer is, in brief, "that (1) there is no evidence to connect defendant with the accident made the basis of plaintiff's cause of action, and therefore no proof of a crime or trespass committed by defendant in Kaufman County under Subdivision 9 of Article 1995, R.C.S.; and (2) being a suit against joint tort feasors, defendant Suit is not a necessary party under subdivision 29a."

The collision occurred some distance west of Crandall, Kaufman County, at a place where East Fork of the Trinity is crossed by several bridges, Highway 175 there curving leftwardly and back to the right, thence going in a northwest direction to Dallas. Plaintiff, Mrs. Taylor, driving from Jacksonville toward Dallas in a blue Plymouth car, testified that the time was about mid-morning, the road surface dry,

visibility good; that as she moved along the inside of this curve and on her part of the road, she noticed a car (Shipley's) approaching from the north, recalling nothing unusual about the manner in which such second car was being driven. Suddenly a third automobile appeared from behind the Shipley car and started to pass it on the right-hand road shoulder. Mrs. Taylor then heard an impact, the third car driving or knocking the one driven by Mrs. Shipley directly in front of the vehicle of witness, at once resulting in a head-on collision between cars one and two. The third car, according to witness, took a turn, "kind of side ways" as if about to turn over, then straightening out and going on down the road. Mrs. Taylor was rendered unconscious and sustained personal injuries as a result of the crash; the other occupant of her car, Mrs. Carter, being fatally injured.

Mrs. Shipley, driver of the second car, a medium blue Chevrolet coach, southbound, said she was moving at a moderate speed when "All of a sudden" something hit the car on right side, the impact knocking her under the wheel; that when she regained control of vehicle it was headed across the road (a two-lane highway), directly in front of the Taylor car; that she was momentarily dazed and did not see at the time what had struck her; that just before colliding with the Taylor car, no other car had passed, traveling south.

The evidence that might in any wise connect defendant Suit with the collision may be generally classed as circumstantial. Her own narrative of events (material hereto) is contained in three statements (Plaintiff's Exhibits 6, 8 and 9), made and signed August 6, 25, and 27, 1947. Miss Suit's oral deposition, taken in April 1948, discloses that she had suffered a nervous breakdown during the preceding November, was treated for some time in a Galveston hospital, and in this deposition testified to a complete loss of memory as to any facts whatever concerning the accident of July preceding. It becomes necessary, therefore, to examine rather closely the exhibits just mentioned. August 6 Statement: Miss Suit was 47 years old at the time, residing in Port Arthur, employed by the Martin Lumber Company as bookkeeper for past twenty years. She owned and was operating a 1941 Oldsmobile, four door sedan (of dark green color) at all material dates. On July 23, 1947, she was returning from a vacation trip to Yellowstone Park, passing by Dallas on "Loop Twelve" about 10:00 A.M. Also occupying the car were her two nieces and nephews (all living at Port Arthur); Delores Foote aged 14, Loretta aged 13, Kenneth aged 11 and Ralph aged 9, the boys in front seat, girls in back. We now quote the language of defendant: " * * I don't actually know how fast I was traveling after we left the Loop—it may have been 50 to 55 miles per hour but I don't honestly know how fast we were going. I am not familiar with this highway and was following a road map. I don't know how long I had been traveling along the highway or where it was but I remember passing a car traveling in the same direction. I don't know what kind of car it was but I did pass to the left side of that car. When I had passed that car and had traveled about a half a block, I passed a car traveling in the opposite direction also. I didn't pay any particular attention to that car and I don't know how fast it was traveling. About a block from where I had passed the first car, that is, when my car had traveled about a block from there, I heard brakes squealing and the noise was quite loud. The kids looked back immediately and I then slowed up and stopped to see what had happened. I glanced back (I did not get out of the car) and saw that the two cars were stopped in about the center of the two-lane highway and it appeared that the left front end of the bumper of the one car and the right tip of the front bumper of the other car had run together. I had heard no crash so I assumed that the two cars had come to a stop just as the bumpers met. I had asked Dolores if the two cars had hit as soon as I heard the brakes and she said, 'yes,' so I stopped immediately but I can't accurately estimate how far from the two cars I stopped. When I looked back, I did not see anyone getting out of the cars so I thought the accident of minor consequence and continued on home."

Continuing in above statement, Miss Suit says that they stopped at Jacksonville for a noon lunch, getting into Port Arthur be-

fore 6:00 P. M.; that she had been home about twenty minutes, unloading luggage, when Deputy Sheriffs Hyde and Hall came and inquired if she had seen an accident that day near Kaufman in which some one had been fatally injured, defendant answering affirmatively, not remembering where it had actually happened. The officers proceeded to check defendant's car for evidence of collision but could find none. A Mr. Sherrill of the State Highway Department later called and secured a sample of the green paint on her car for comparison with that found on one of the cars involved in the accident. She had heard nothing further as to the result of an analysis. Defendant went on to say that "To the best of my knowledge, I did not sideswipe either of the cars when I passed them. I felt no jar or jolt when I passed either of them and in my own mind I am definitely convinced that I did not sideswipe either of the two cars"; and that traffic was light on this part of the road.

Statement of August 25: Defendant reiterates that she was driving southeast on Highway 175 on July 23, returning to home in Port Arthur. About mid-morning she had reached a point below Dallas where there was a curve in the road; that she passed a light colored car going in same direction (southeast) and about half a block further on passed a blue looking car going in opposite direction. After passing the blue car and going on about 300 feet she heard brakes squeaking; that she stopped car and looked back through side door, it appearing as if the two cars she had passed had locked left front fenders in center of highway; that she did not hear any crash and, seeing no harm done, drove on. Statement of August 27: " * * * Just after this accident, when I stopped and looked back, I did not see but two cars, one was a dark blue car and the other was a light gray car, and the gray car was going the same direction that I was going, the blue car was going in the opposite direction. I only saw the two cars, just before and just after the accident. There were no other cars in sight at that time. After I came home, I noticed some light paint on the left side of my car, along the bottom of the front door, I cannot account for this paint. I could not have struck the light car that I passed, with the left side of my car, since I passed this car on the left. There is also a new scratch on the left end of the front bumper of my car that I cannot account for, I have not seen this scratch before. There is a scratch on the left front fender that I cannot account for, this scratch is on the molding along the side of the front fender. I did not notice the paint until August 27th." Defendant testified in the April 1948 deposition that upon return from trip on July 23, she did not drive her car for three or four weeks; an interval when she was not working but stay with a friend. Miss Suit came to Kaufman County in the fall of 1947 in connection with persistent claims that she was involved in the accident in question.

J. L. McCollum, Kaufman County Deputy Sheriff, testified that on the particular morning (July 23) he received word of a serious automobile collision near the River Bridge; his informant stating that at a point near Crandall he had just passed a green car or coupe, going south, driven by a woman at a rather high rate of speed; time of passing the green automobile coinciding with the accident; that he, McCollum, had called the Henderson County Sheriff's office to look out for and check a green coupe; the Athens officer reporting back that a green Oldsmobile had passed, giving license number; that such number had been checked and found to be from Jefferson County; then calling the Sheriff's office at Beaumont, requesting an investigation of the described automobile. Witness saw the Shipley car just after the wreck. On the right rear fender was evidence, in form of some green paint, of where another car had struck it, or "what I took it to be." In connection with the paint were marks, one of these a quarter-inch long, wide as a match, the other still smaller, and some deep scratches on right rear bumper. No other accident at that particular curve had been reported to the Sheriff's office that day, as witness recalled; the Henderson County officers making no report to him on any green colored car, that day, other than the one driven by defendant. McCollum said that he talked with Miss Suit when she came to Kaufman later on, discussing the Shipley-Taylor car collision with her, and

that she denied being a party to it; that she was in a somewhat nervous condition, crying a little; that she had located the accident (described in her written statements) as by "that river bridge," witness feeling certain that they were talking about the same collision.

In the present appeal, we may properly assume the existence of a third or (as appellant terms it) a "mystery car" whose driver undoubtedly had committed a trespass within meaning of subdv. 9, Art. 1995, V.A.S., violation of road law, Art. 801, P. C.; the only question before the trial court being of whether the foregoing facts and circumstances reasonably tended to identify defendant as its driver. Notwithstanding the forceful argument of earnest counsel to the contrary, we conclude that the issue just suggested was raised under the related facts; at least, we cannot say that there was no basis in fact for the order under review. "Such being the record, the finding of the trial court should not be disturbed." Compton v. Elliott, 126 Tex. 232, 88 S.W.2d 91, 95; Sibley v. Sheerin, Tex.Civ.App., 287 S. W. 58.

On appeal from an order overruling (or sustaining) a plea of privilege, every disputed issue raised by the testimony must be resolved in support of the judgment where the trial is to the court, with no findings of fact or conclusions of law. Chapman v. Chapman, Tex.Civ.App., 172 S.W. 2d 127; Rasberry v. Jones, Tex.Civ.App., 195 S.W.2d 947; and in passing upon whether the plea was properly overruled, a reviewing court is only concerned with sufficiency of the evidence, it being deemed unimportant that particular evidence is contradicted. Nielson v. Jackson, Tex.Civ. App., 200 S.W.2d 831.

We must refrain from commenting on any evidence herein as to its weight, but, referring again to the record, we think the following facts may be properly considered as of probative value in connection with the ruling made: (1) By her own admissions, defendant was witness to a car mix-up on the highway, which, in time and place, as the court could infer, was the Shipley-Taylor collision; (2) along with the collision described by defendant, hers was the only other car to pass the two involved cars going in opposite directions; (3) her discovery on August 27 of light paint mark on left side of the car, scratches on left front fender and bumper, not having driven her green Oldsmobile for some three or four weeks following July 23; (4) the testimony given by witness McCollum of green paint and scratches on left front fender, etc., of Shipley car. And here we might add that implication of defendant, as driver of the offending car, is not dependent upon the piling of inference upon inference, as defendant argues, but rather on inferences to be drawn from facts directly testified to by witnesses. In brief, above detail of testimony, without more, viewed most favorably in support of the judgment rendered, places her at scene of the collision; and other facts and circumstances, similarly considered, are susceptible of the construction that she was even more immediately involved.

Needless to say, the issue is here sharply drawn, not of the fact of a "trespass" by some third car, but solely as to its identification ; and should Judge Dawson, for reasons satisfactory to himself, have ruled favorably on defendant's plea, it would have likewise been our duty to uphold it. On the other hand, the fact issues already discussed having been ruled on adversely to appellant, the trial court's action must be in all respects affirmed. This conclusion obviously renders unnecessary a discussion of Point 5, relative to applicability or not of Exception 29a, Art. 1995.

The further point (No. Six) briefed by appellant complains of improper admission in evidence of three pictures purportedly representing the Oldsmobile owned by Miss Suit. We think the exhibits were subject to some of the objections made, at least in the matter of authentication. Even so, no reversible error appears, for, as appellees point out, it is neither claimed nor shown that the trial court considered such evidence or based his decision thereon, in whole or in part. An affirmance of judgment is ordered as herein above indicated.